# United States Tax Court

T.C. Memo. 2023-81

DONALD E. SWANSON,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 21701-18.            Filed June 29, 2023.

————

*Christopher S. Crago*, Andrew Simister (student), and Greg Spurgetis (student), for petitioner.

*Adriana E. Vargas*, *Daniel G. Kempland*, and *Melissa D. Lang*, for respondent.

## MEMORANDUM FINDINGS OF FACT AND OPINION

PUGH, *Judge*: Respondent determined the following deficiencies, additions to tax, and accuracy-related penalties with respect to Donald Swanson's federal income tax for years 2014–16 (years in issue):

| Year | Deficiency | Additions to Tax / Penalties | |
|------|-----------|---------|---------|
| | | *§ 6651(a)(1)* | *§ 6662(a)* |
| 2014 | $16,135 | $4,034 | $3,227 |
| 2015 | 38,762 | 9,691 | 7,752 |
| 2016 | 4,299 | — | 860 |

Deficiencies resulted largely from respondent's determination that Mr. Swanson's fishing charter activity was not a business for profit

**[\*2]** within the meaning of section 183[1] and that he was not entitled to business expense deductions. Respondent also made various other income adjustments and reduced or disallowed some itemized deductions.

In the Second Stipulation of Facts the parties conceded certain adjustments for each year in issue.

*Tax Year 2014*

Respondent conceded that Mr. Swanson (1) is not liable for an accuracy-related penalty of $3,227 and (2) is entitled to a noncash charitable contribution deduction of $199. Mr. Swanson conceded that he is not entitled to (1) a tax expense deduction of $2,288 (admitting that his deduction is $1,306 as determined in the notice of deficiency) and (2) a car and truck expense deduction of $1,993.

*Tax Year 2015*

Respondent conceded that Mr. Swanson is not liable for an accuracy-related penalty of $7,752. Respondent also conceded that Mr. Swanson is entitled to (1) a noncash charitable contribution deduction of $200; (2) a cash charitable contribution deduction of $1,362; (3) a supplies expense deduction of $1,389; and (4) an insurance expense deduction of $1,259. Mr. Swanson conceded that he is not entitled to (1) a mortgage interest expense deduction of $9,777; (2) a car and truck expense deduction of $1,250; (3) a utilities expense deduction of $600; and (4) an advertising expense deduction of $640. Mr. Swanson also conceded that his gross receipts reported on Schedule C, Profit or Loss From Business, should be increased by $155 for income received for tax preparation services he provided.

*Tax Year 2016*

Respondent conceded that Mr. Swanson is not liable for an accuracy-related penalty of $860. He also conceded that Mr. Swanson is entitled to (1) a cash charitable contribution deduction of $670; (2) an insurance expense deduction of $1,244; (3) an advertising expense

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

**[\*3]** deduction of $2,256; and (4) an other expense deduction of $8,487. Mr. Swanson conceded that he is not entitled to (1) a charitable contributions carryover of $3,724; (2) a medical and dental expense deduction of $409; (3) a car and truck expense deduction of $1,714; and (4) a meals and entertainment expense deduction of $74.

In his Opening Brief respondent stated that after concessions, the issues for consideration are whether Mr. Swanson: (1) engaged in a fishing charter activity with the objective of making a profit within the meaning of section 183; (2) is entitled to deductions for expenses reported on the Schedules C attached to his federal income tax returns for the years in issue; (3) is entitled to deductions reported on Schedules A, Itemized Deductions, attached to his federal income tax returns for the years in issue; (4) had income in excess of the amounts reported on his federal income tax returns for the years in issue; (5) had capital gains from the sale of real property in excess of the amounts reported on his federal income tax return for 2015; (6) is entitled to charitable contribution deductions in amounts greater than allowed by respondent for the years in issue; (7) is entitled to expense deductions reported on Schedules E, Supplemental Income and Loss, in amounts greater than respondent allowed for 2014 and 2015; and (8) is liable for section 6651(a)(1) additions to tax for failure to timely file federal income tax returns for 2014 and 2015.

The two issues that Mr. Swanson challenged at trial and in his posttrial briefs are whether his fishing charter trip activity was a business or a hobby within the meaning of section 183 and whether he is entitled to deductions for certain expenses related to his activity in 2015 (boat and airplane expenses) and 2016 (boat expenses). Because one of the issues involves unreported income, on which respondent bears the burden of proof, we must decide whether respondent has met his burden. Respondent has the burden of production as to the additions to tax. *See* § 7491(c). We deem Mr. Swanson to concede all other issues because he did not challenge them at trial or in his briefs, and we sustain respondent's determinations with respect to those issues. We make no separate findings of fact related to those conceded issues.

FINDINGS OF FACT

The facts we find are derived from the pleadings, the trial testimony, and the documents admitted into evidence and include the stipulated facts and documents. Mr. Swanson resided in Alaska when he timely filed his Petition.

**[*4]** I.    *Happy Jack Charters*

Mr. Swanson is an avid fisherman and has been fishing in Alaska for more than 30 years. In 2010, after retiring from two jobs (loading cargo and driving a city bus), he decided to establish Happy Jack Charters and acquired a boat designed to fish for halibut. Mr. Swanson wanted to show people where to fish and how to fish. His boat, a 22-foot Boulton Sea skiff, was made in Oregon.

During the years in issue Mr. Swanson lived in Anchorage, Alaska, but his plan was to take people on halibut fishing trips in Homer, Alaska. His life partner's children lived in Homer, and they let Mr. Swanson store his boat, camper, truck, and other things on their property. This allowed Mr. Swanson to reduce his expenses. He hoped to retire eventually, buy a cabin, and fish in Homer. In 2015, to shorten his travel time between Anchorage and Homer, Mr. Swanson acquired a plane. Although he also wanted to use the plane to transport customers, he was not allowed to do that during the years in issue because he had only a student license.

Mr. Swanson did not own a commercial fishing permit for halibut fishing but rented one in 2015 and 2016. The State of Alaska requires fishermen to maintain a detailed log of fish caught daily. Because Mr. Swanson did not have a commercial fishing license in 2014, he did not take any fishing charter trips and did not file fishing logs with the Alaska Department of Fish and Game for that year. In 2015 and 2016 Mr. Swanson filed fishing logs with the Alaska Department of Fish and Game reporting five fishing charter trips in 2015: on June 10 and 14, and on July 15, 21, and 25; and six fishing charter trips in 2016: on July 2, 12, 14, 16, and 22, and on August 18. Mr. Swanson also took his boat for personal fishing trips. During the years in issue he sometimes used the personal fishing trips to photograph people catching fish for advertisements to promote Happy Jack Charters. The halibut fishing season lasts from May to September.

A cancer diagnosis and treatment restricted Mr. Swanson's physical activities in 2013, but during the years in issue he did not have to travel for cancer treatments. In 2015 he suffered a knee injury in an automobile accident, but he was able to perform the duties of a captain after the injury. A boat fire in 2016 took his boat out of service for the week or two that the repairs took to complete.

[*5]   Mr. Swanson did not rely on the income from operating Happy Jack Charters. His main sources of income for the years in issue were Social Security, pension, and rental income from his two real estate properties. He did not have a separate bank account, accounting or recordkeeping system, or income and expense journals for Happy Jack Charters for the years in issue. But he did keep expense receipts for tax purposes.

In 2014 the Internal Revenue Service (IRS) audited Mr. Swanson's 2010 federal income tax return. Mr. Swanson explained that during the audit the IRS agent told him that he did not have "the right kind of insurance" and "the right kind of license." Following the audit, Mr. Swanson purchased "commercial insurance" and a "commercial license."[2] In addition, he started using an application called "Square" to track his business income, and he joined the Chamber of Commerce.

During the years in issue Mr. Swanson traveled to several trade shows hoping to attract customers for his fishing charter activity. He did not land any customers from the shows in the years in issue, but he still hoped that they would come later.

II.   *Business Expenses (Schedule C)*

Mr. Swanson produced copies of receipts for boat and airplane expenses for 2015 and 2016:

| *2015 Boat Expenses* | | *2015 Airplane Expenses* | | *2016 Airplane Expenses* | |
|---|---|---|---|---|---|
| Petro Marine | $174.06 | Avionics | $95.00 | Missionary | $55.44 |
| Petro Marine | 126.03 | No Li Avionics | 56.30 | Smon | 77.61 |
| Petro Marine | 164.51 | No Li Avionics | 99.90 | Northern Lights | 78.65 |
| Petro Marine | 125.43 | No Li Avionics | 32.05 | Northern Lights | 7.55 |
| Petro Marine | 8.22 | No Li Avionics | 12.95 | Ace | 73.38 |
| Petro Marine | 75.97 | No Li Avionics | 55.90 | Ace | 80.77 |
| Petro Marine | 107.12 | No Li Avionics | 39.90 | Ace | 69.27 |
| Petro Marine | 142.13 | No Li Avionics | 678.45 | Crowley Fuels | 62.92 |
| Petro Marine | 92.89 | Ace | 35.06 | Crowley Fuels | 44.82 |
| Petro Marine | 115.99 | Ace | 48.10 | Ace | 38.44 |
| Petro Marine | 47.22 | Ace | 70.27 | Crowley Fuels | 50.53 |
| Petro Marine | 82.23 | Ace | 44.16 | Ace | 35.75 |
| Petro Marine | 58.54 | Ace | 26.12 | Ace | 63.66 |

---

[2] The record does not indicate when Mr. Swanson bought the insurance, but we infer that it was after the IRS audit and before the years in issue.

| [*6] | | | | | |
|---|---|---|---|---|---|
| Petro Marine | 81.41 | Ace | 48.66 | Ace | 57.75 |
| Petro Marine | 158.56 | Ace | 58.31 | Ace | 84.45 |
| Petro Marine | 29.71 | Ace | 64.03 | Ace | 40.81 |
| Petro Marine | 111.74 | Ace | 53.42 | Ace | 68.59 |
| Petro Marine | 90.96 | Ace | 39.20 | Ace | 41.17 |
| Petro Marine | 20.18 | Ace | 53.78 | C2 Aviation | 55.19 |
| Petro Marine | 39.53 | Missionary | 76.74 | Seaplanes North | 52.50 |
| — | — | Ace | 52.28 | Ace | 55.55 |
| — | — | Ace | 84.39 | Crowley Fuels | 46.44 |
| — | — | Ace | 61.21 | Crowley Fuels | 49.00 |
| — | — | Ace | 38.75 | Crowley Fuels | 9.28 |
| — | — | C&J | 20.00 | Pathfinder | 74.90 |
| — | — | Ace | 54.27 | State of Alaska | 210.00 |
| — | — | Smokey Bay | 45.49 | LASA | 165.00 |
| — | — | Petro Marine | 47.22 | Sky Airports | 35.00 |
| — | — | Sky Airparts | 61.68 | Stoddards | 8.00 |
| — | — | Municipality | 100.00 | LASA | 165.00 |
| — | — | Bieg Big Studios | 680.00 | T&B Aircraft | 715.00 |
| — | — | Gary M | 600.00 | Seaplanes North | 1,052.48 |
| — | — | AMA | 371.00 | Seaplanes North | 761.59 |
| — | — | Ron Stafford | 565.00 | Seaplanes North | 14.70 |
| — | — | AMA | 557.00 | Seaplanes North | 129.85 |
| — | — | — | — | Seaplanes North | 36.00 |
| — | — | — | — | Seaplanes North | 65.56 |
| — | — | — | — | Avemco | 612.75 |
| — | — | — | — | Aviation Med. | 173.40 |
| — | — | — | — | Ron Stoffono | 450.00 |
| **Total** | **$1,852** | | **$5,027** | | **$5,969** |

III.    *Rental Income*

Mr. Swanson owned two rental properties in Anchorage. He received rental income during the years in issue from these properties. In 2015 Mr. Swanson sold one of the properties for $279,900.

IV.    *Bank Deposits Analysis*

Respondent's revenue agent (RA) conducted a bank deposits analysis for the years in issue. For 2014 the RA reviewed the Denali Alaskan Federal account ending in 5879 (account 5879), the Alaska USA Federal account ending in 1643 (account 1643), and the Alaska USA Federal account ending in 1629 (account 1629). To determine Mr.

[*7] Swanson's gross receipts for the years in issue the RA used only accounts 5879 and 1643 because account 1629 is a joint account. The RA determined that in 2014 the total amount of bank deposits in the two accounts was $116,435. In 2014 Mr. Swanson reported $75,785 of income on his federal income tax return; therefore, the RA concluded that in 2014 Mr. Swanson had unreported income of $40,650.

The RA determined that in 2015 the total amount of bank deposits was $265,919. In 2015 Mr. Swanson reported $241,966 of income; therefore, the RA concluded that in 2015 Mr. Swanson had unreported income of $23,953. The RA classified the unreported income into three categories: (1) unexplained unreported income of $18,983; (2) income reportable on Schedule E, Line 3, Rents Received, of $4,820; and (3) income reportable on Schedule C for income earned as a tax professional of $150.

The RA determined that in 2016 the total amount of bank deposits was $68,988. In 2016 Mr. Swanson reported $53,042 of income; therefore, the RA concluded that in 2016 Mr. Swanson had unreported income of $15,946. An error in the bank deposits analysis for 2016 resulted in an erroneous increase of $290 in the total deposits.

Mr. Swanson admitted that he received rental income and was paid as a tax professional for helping his friend to prepare a tax return on one occasion.

V.     *Federal Income Tax Returns*

Mr. Swanson filed Forms 1040, U.S. Individual Income Tax Return, for 2014 and 2015 on August 15, 2017. He filed Form 1040 for 2016 on June 5, 2017.

For 2014 Mr. Swanson reported $1,500 of gross receipts and $1,993 of business expenses from his fishing charter activity. For 2015 he reported $2,345 of gross receipts and $36,960 of business expenses from his fishing charter activity. And for 2016 Mr. Swanson reported $3,709 of gross receipts and $25,631 of business expenses from his fishing charter activity. Mr. Swanson filed federal income tax returns reflecting income and business expense deductions for his fishing charter activity for 2010 and 2012 through 2016. He reported net business losses for each of those years, totaling $131,105.

**[*8]**                                    OPINION

The main issue in this case is whether during any of the years in issue Mr. Swanson entered into or carried on his fishing charter activity for profit and whether the associated deductions were proper.

I.      *Burden of Proof*

Generally, the taxpayer bears the burden of proving that the Commissioner's determinations are erroneous. Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). Under section 7491(a)(1), "[i]f, in any court proceeding, a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer for any tax imposed by subtitle A or B, the Secretary shall have the burden of proof with respect to such issue." *See Higbee v. Commissioner*, 116 T.C. 438, 442 (2001). Mr. Swanson does not contend that the burden of proof should shift to respondent under section 7491(a), and we conclude that section 7491(a) does not apply here.

In cases involving unreported income, the Commissioner must establish an evidentiary foundation connecting the taxpayer to the income-producing activity, *Weimerskirch v. Commissioner*, 596 F.2d 358, 361 (9th Cir. 1979), *rev'g* 67 T.C. 672 (1977), or demonstrate that the taxpayer actually received income, *Edwards v. Commissioner*, 680 F.2d 1268, 1270–71 (9th Cir. 1982). Once the Commissioner has met this threshold burden, the burden shifts to the taxpayer to show that the Commissioner's determination of income was arbitrary or erroneous. *Hardy v. Commissioner*, 181 F.3d 1002, 1004–05 (9th Cir. 1999), *aff'g* T.C. Memo. 1997-97.

II.     *For-Profit Business*

Taxpayers are generally allowed deductions for business and investment expenses. *See* §§ 162, 212. Under section 183(a), individuals are not allowed a deduction attributable to an activity "if such activity is not engaged in for profit" except to the extent provided by section 183(b). Section 183(b) allows deductions that would have been allowable had the activity been engaged in for profit but only to the extent of gross income derived from the activity (reduced by deductions attributable to the activity that are allowable without regard to whether the activity was engaged for profit).

Section 183(c) defines an activity not engaged in for profit as "any activity other than one with respect to which deductions are allowable

[*9] for the taxable year under section 162 or under paragraph (1) or (2) of section 212." For expenses to be fully deductible under section 162 or 212, taxpayers must show that they are engaged in the activity with the primary objective of making a profit. *Wolf v. Commissioner*, 4 F.3d 709, 713 (9th Cir. 1993), *aff'g* T.C. Memo. 1991-212; *see also Westbrook v. Commissioner*, 68 F.3d 868, 875 (5th Cir. 1995), *aff'g* T.C. Memo. 1993-634.

The expectation of a profit need not be reasonable, but the taxpayer must conduct the activity with the actual and honest objective of making a profit. *Keating v. Commissioner*, 544 F.3d 900, 904 (8th Cir. 2008), *aff'g* T.C. Memo. 2007-309. Greater weight is given to objective facts than to the taxpayer's self-serving statement of intent. *King v. Commissioner*, 116 T.C. 198, 205 (2001); Treas. Reg. § 1.183-2(a) and (b).

The regulations provide a nonexhaustive list of nine factors that should be considered: (1) the manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or the taxpayer's advisers; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar activities; (6) the taxpayer's history of income or loss with respect to the activity; (7) the amount of occasional profits, if any, which are earned; (8) the financial status of the taxpayer; and (9) whether elements of personal pleasure or recreation are involved. Treas. Reg. § 1.183-2(b). Neither a single factor, nor the existence of even a majority of the factors is controlling; rather all the facts and circumstances should be evaluated. *See Golanty v. Commissioner*, 72 T.C. 411, 426–27 (1979), *aff'd without published opinion*, 647 F.2d 170 (9th Cir. 1981).

A.    *Manner in Which the Taxpayer Carries on the Activity*

Carrying on an activity in a businesslike manner, as by maintaining complete and accurate books and records, conducting the activity in a manner similar to other activities of the same nature that are profitable, and making changes in operations to adopt new techniques or abandon unprofitable methods, is a factor that may indicate a profit objective. Treas. Reg. § 1.183-2(b)(1). Businesslike conduct is characterized by carefully and thoroughly investigating the profitability of a proposed venture, monitoring the venture's progress, and attending to problems that arise over time. *See Ronnen v. Commissioner*, 90 T.C. 74, 93 (1988); *Taube v. Commissioner*, 88 T.C. 464, 481–82 (1987). An important indication of whether an activity is

**[\*10]** being performed in a businesslike manner is whether the taxpayer implements methods for controlling losses, including efforts to reduce expenses and generate income. *See Foster v. Commissioner*, T.C. Memo. 2012-207, 2012 WL 3000350, at \*6; *Dodge v. Commissioner*, T.C. Memo. 1998-89, 1998 WL 88175, at \*5, *aff'd*, 188 F.3d 507 (6th Cir. 1999).

For section 183 purposes, the key question is not whether the taxpayer keeps records, but whether the taxpayer *uses* his records to improve profitability and take steps to control expenses and increase income. *See Golanty*, 72 T.C. at 430. Mr. Swanson explained that he kept various receipts for tax purposes that he would hand to his accountant at the end of the year "to figure it out." Mr. Swanson did not have a separate bank account for Happy Jack Charters; instead, he used Square to track his income from the fishing charter activity. Mr. Swanson did not explain whether and how he used the data about his income and expenses to make his activity profitable. Neither did he keep complete records of his Happy Jack Charters activity. His maintenance of receipts of various expenses is insufficient. *See Keating*, T.C. Memo. 2007-309 (holding that complete and accurate books and records are more than the mere maintenance of lists of, and receipts for, expenses). And we are skeptical about the accuracy of Mr. Swanson's income tracking using Square as respondent's bank deposits analysis demonstrated significant discrepancies between his reported income on his federal income tax returns and his deposits into his bank accounts.

Mr. Swanson did not have a business plan and made no significant changes to reduce expenses and generate income the entire time he operated Happy Jack Charters. He experienced significant losses not only during the years in issue but from the beginning of his fishing charter activity in 2010.

Mr. Swanson explained that he implemented some changes after respondent's audit of his 2010 federal income tax return. He explained that he obtained a fishing license and commercial insurance, started using Square, and engaged in advertising with the Chamber of Commerce. He also attended trade shows hoping eventually to land new clients. Some of these changes had nothing to do with increasing profitability or reducing expenses but instead were necessary to comply with applicable laws and regulations (maintaining a valid fishing license and commercial insurance). Advertising generally indicates a profit motive, but Mr. Swanson's explanation of how advertising helped him increase profitability of Happy Jack Charters was vague and unpersuasive. He mentioned that his first client from trade show

**[\*11]** advertising was in 2017. During the three years in issue Mr. Swanson had only 11 fishing trips. Despite the apparent lack of clients and income, Mr. Swanson purchased an airplane and incurred significant expenses related to storing, maintaining, and operating it. Over the seven years of operating Happy Jack Charters, Mr. Swanson never made changes that enhanced his prospect for making a profit.

Because Mr. Swanson did not maintain complete business records, did not have a business plan, and did not respond to losses by changing how he conducted his fishing charter activity, we find that he did not conduct the activity in a businesslike manner. Therefore, this factor weighs against Mr. Swanson.

B.      *The Expertise of the Taxpayer or His Advisers*

The taxpayer's expertise, research, and study of an activity, as well as his consultation with experts, may be indicative of a profit motive. Treas. Reg. § 1.183-2(b)(2). The type and quality of advice that a taxpayer seeks is important to the analysis of the taxpayer's consultation with experts. *See Engdahl v. Commissioner*, 72 T.C. 659, 668 (1979) (noting that informal and continuous consultations with experts in the field demonstrate an intent to engage in a business for profit).

We do not doubt Mr. Swanson's fishing expertise, but he did not demonstrate to us that he had any expertise in running a business, much less a fishing charter business. When he first started, he did not have a commercial fishing license or commercial insurance; only after the IRS audit did he rectify these omissions. Mr. Swanson did not demonstrate how he prepared for running a fishing charter business, whether he did any research or study, or whether he consulted with experts or received any other advice about operating a fishing charter business.

Mr. Swanson testified that he joined the Chamber of Commerce but did not explain whether or how it better equipped him to run a profitable fishing charter business. He testified only that he viewed it as another avenue for advertising.

Because Mr. Swanson lacked expertise in running a fishing charter business and did not consult any advisers to compensate for his lack of business expertise, this factor weighs against him.

**[*12]**   C.   *The Time and Effort Expended by the Taxpayer in Carrying On the Activity*

The taxpayer's devotion of much of his personal time and effort to carrying on an activity may indicate a profit motive, particularly if the activity does not involve substantial personal or recreational enjoyment. Treas. Reg. § 1.183-2(b)(3).

Mr. Swanson did not take any charter fishing trips in 2014 and had only five and six trips in 2015 and 2016, respectively. He testified that health issues restricted his physical activities in 2013 but did not indicate how his health problems affected his activities in the years in issue. Rather, the main reason Mr. Swanson did not take any fishing trips in 2014 was that he did not have a commercial fishing license or commercial insurance. Mr. Swanson did not explain why he had only 11 trips in 2015 and 2016.

The limited time that Mr. Swanson spent on fishing charter trips in the years in issue indicates a lack of intent to make a profit from the fishing charter activity. We find that this factor weighs against Mr. Swanson.

D.   *Expectation that Assets Used May Appreciate in Value*

An expectation that assets used in an activity will appreciate may indicate a profit motive even if the taxpayer derives no profit from current operations. *Id.* subpara. (4).

Mr. Swanson did not address this factor at trial or in posttrial briefs, and offered no other evidence to show any assets used in the fishing charter activity will appreciate in value. Accordingly, this factor is neutral.

E.   *The Success of the Taxpayer in Carrying On Similar or Dissimilar Activities*

If a taxpayer has previously engaged in similar activities and made them profitable, this success may show that the taxpayer has a profit objective, even if the current activity is unprofitable currently. *Id.* subpara. (5).

Mr. Swanson did not address this factor at trial or in posttrial briefs, and offered no other evidence to establish his success in other businesses. Respondent notes that Mr. Swanson engaged in the

**[\*13]** management of rental properties which also generated losses for all years in issue. We find that this factor weighs against Mr. Swanson.

    F.    *The Taxpayer's History of Income or Losses with Respect to the Activity*

A history of continued losses in an activity may indicate the lack of a profit motive. *Id.* subpara. (6). While a series of losses during the startup stage of an activity may not necessarily indicate a lack of profit motive, a record of large losses over many years is persuasive evidence that a taxpayer did not have that motive. *See Golanty*, 72 T.C. at 426.

Mr. Swanson started Happy Jack Charters in 2010 and experienced a loss for every year through 2016. Over the course of these seven years he reported more than $130,000 in losses. Mr. Swanson contends that unforeseen circumstances caused him to experience losses.

We sympathize with Mr. Swanson's setbacks, but we do not think that those issues were the main reason his fishing charter activity was unprofitable. Mr. Swanson testified that despite his health problems he was able to perform the duties of a boat captain and that he did not have to travel for treatment during the years in issue. The 2015 automobile accident also did not keep Mr. Swanson from performing his fishing charter activity. He testified that despite the accident, he was able to work that season. Lastly, the 2016 boat fire interrupted Mr. Swanson's fishing charter activity for only a week or two, the time it took to make the necessary repairs.

Mr. Swanson's continuous and significant losses indicate a lack of a profit motive, and this factor weighs against him.

    G.    *The Amount of Occasional Profits, if Any, Which Were Earned*

A taxpayer's generation of some profits from an otherwise money-losing venture may support the existence of a profit motive. Treas. Reg. § 1.183-2(b)(7).

Mr. Swanson did not address this factor at trial or in posttrial briefs, and he stipulated that Happy Jack Charters experienced losses for the seven years from its launch through the years in issue. Neither did he attempt to show that there is potential for significant profit in the future. We find that this factor weighs against Mr. Swanson.

**[\*14]**  H.    *The Financial Status of the Taxpayer*

Substantial income from sources other than the activity may indicate that the activity is not engaged in for profit. *Id.* subpara. (8).

Mr. Swanson did not rely on income from Happy Jack Charters as his main source of income, although he hoped that one day he would. Mr. Swanson received income from a retirement pension, Social Security retirement, and rental properties. He used his purported losses from the fishing charter activity to reduce his income from other sources. Because Mr. Swanson did not receive substantial income from his fishing charter activity, he was spending his income from other sources to fund it. This factor also weighs against Mr. Swanson.

I.    *Elements of Personal Pleasure or Recreation*

The presence of personal motives for conducting an activity may indicate lack of a profit objective, especially if the activity involves personal or recreational aspects. *Id.* subpara. (9). An activity is not classified as a hobby simply because the taxpayer finds it pleasurable. *Jackson v. Commissioner*, 59 T.C. 312, 317 (1972). The analysis does not require that the activity be engaged in with the exclusive intent of deriving a profit or even maximizing profit. Treas. Reg. § 1.183-2(b)(9). That said, "where the possibility for profit is small . . . and the possibility for gratification is substantial, it is clear that the latter possibility constitutes the primary motivation for the activity." *Dodge v. Commissioner*, 1998 WL 88175, at \*7 (quoting *Burger v. Commissioner*, T.C. Memo. 1985-523, *aff'd*, 809 F.2d 355 (7th Cir. 1987)).

We have no doubt that Mr. Swanson finds fishing pleasurable. Mr. Swanson used his boat for personal fishing trips. He denied some personal use and admitted some too. He could not adequately explain the number of times that he had to refuel the boat that had no corresponding charter booking. In addition Mr. Swanson testified that his retirement plan has been to retire to Homer and fish.

A review of the entire record and the testimony at trial persuades us that Mr. Swanson's personal motives and the recreational or personal aspects of his fishing charter activity outweighed his desire for profit. This factor weighs against Mr. Swanson.

**[\*15]** J.    *Conclusion*

While Mr. Swanson testified credibly about the time he spent on Happy Jack Charters and the obstacles he faced, he did not demonstrate that his fishing charter activity was more than a retirement hobby. Considering the evidence as a whole, we are convinced that Mr. Swanson wanted his fishing charter activity to succeed and he devoted time to it, but he was not operating it as a business.

We therefore find that during the years in issue Mr. Swanson did not operate his fishing charter activity with the requisite profit intent. Consequently, he is entitled to deductions attributable to that activity only to the extent allowed by section 183(b).

III.    *Unreported Income: Bank Deposits Analysis*

Gross income includes "all income from whatever source derived." § 61(a). A taxpayer must maintain books and records establishing the amount of his gross income. § 6001. If a taxpayer fails to maintain and produce the required books and records, the Commissioner may determine the taxpayer's income by any method that clearly reflects income. *See* § 446(b); *Petzoldt v. Commissioner*, 92 T.C. 661, 693 (1989); Treas. Reg. § 1.446-1(b)(1). The Commissioner's reconstruction of income "need only be reasonable in light of all surrounding facts and circumstances." *Petzoldt*, 92 T.C. at 687.

The bank deposits method is a permissible method of reconstructing income. *See Clayton v. Commissioner*, 102 T.C. 632, 645 (1994); *see also Kudo v. Commissioner*, T.C. Memo. 1998-404, *aff'd*, 11 F. App'x 864 (9th Cir. 2001). Bank deposits constitute prima facie evidence of income. *See Tokarski v. Commissioner*, 87 T.C. 74, 77 (1986). The Commissioner need not show the likely source of a deposit treated as income but "must take into account any nontaxable source or deductible expense of which [he] has knowledge" in reconstructing income using the bank deposits method. *Clayton*, 102 T.C. at 645–46. He need not follow any "leads" suggesting that a taxpayer has deductible expenses. *DiLeo v. Commissioner*, 96 T.C. 858, 872 (1991), *aff'd*, 959 F.2d 16 (2d Cir. 1992). After the Commissioner reconstructs the taxpayer's income and determines a deficiency, the taxpayer bears the burden of proving that the bank deposits analysis is unfair or inaccurate. *See Clayton*, 102 T.C. at 645; *see also DiLeo*, 96 T.C. at 883. The taxpayer must prove that the reconstruction is in error and may do so by proving that all or part of a deposit is not taxable. *See Clayton*, 102 T.C. at 645.

**[\*16]** Because Mr. Swanson did not maintain books and records sufficient to establish his income and expenses, the RA reconstructed Mr. Swanson's income using the bank deposits method. To support the analysis, respondent produced bank records. Further, respondent proved at least a few likely sources of income—Mr. Swanson admitted that he received rental income as well as one payment for preparing a friend's tax return. Respondent's analysis is well supported, and we accept the reconstruction of income and expenses as reasonable and accurate. Thus, we conclude that respondent has met his burden of proof.

Mr. Swanson did not argue that respondent's reconstruction was unfair or inaccurate and thus did not meet his evidentiary burden. We therefore sustain respondent's determinations with respect to unreported income for the years in issue.

IV.    *Additions to Tax*

Respondent determined additions to tax under section 6651(a)(1) for 2014 and 2015. Respondent bears the burden of production with respect to additions to tax and must produce evidence that they are appropriate. *See* § 7491(c); *Higbee*, 116 T.C. at 446–47.

Section 6651(a)(1) imposes an addition to tax for failure to file a return on or before the due date (including extensions) unless the taxpayer can establish that such failure was "due to reasonable cause and not due to willful neglect." To demonstrate reasonable cause, a taxpayer must show that he exercised ordinary business care and prudence but was nevertheless unable to file on time. *United States v. Boyle*, 469 U.S. 241, 246 (1985); Treas. Reg. § 301.6651-1(c)(1).

Respondent produced evidence of late filing, which Mr. Swanson did not dispute. Neither did he argue that the failure to timely file his 2014 and 2015 tax returns was due to reasonable cause. Thus, we conclude that respondent met his burden of production with respect to the additions to tax.

To reflect the foregoing and respondent's concessions,

*Decision will be entered under Rule 155.*